# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

C. LYNN THOMPSON,

       Plaintiff,

vs.                                        No. CIV 12-0620 JB/LFG

INTEL CORPORATION,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Remand, filed June 11, 2012 (Doc. 6)("Motion to Remand"). The Court held a hearing on July 11, 2012. The primary issues are: (i) whether the Court can consider evidence that Defendant Intel Corporation has presented in support of the existence of diversity jurisdiction under 28 U.S.C. § 1332(a) but that it filed after removal occurred; and (ii) whether Intel Corp. has proved by a preponderance of the evidence that diversity jurisdiction exists. The Court will deny the Motion to Remand. The Court may properly consider the post-removal evidence that Intel Corp. has offered to support the existence of diversity jurisdiction. The Court finds that Intel Corp. has proved by a preponderance of the evidence that diversity jurisdiction exists under 28 U.S.C. § 1332(a) by presenting evidence that there is complete diversity among the parties and that the amount in controversy exceeds $75,000.00. Intel Corp. must, however, amend its notice of removal to include missing jurisdictional allegations and to include its supporting affidavits. Specifically it should include allegations in the amended notice of removal that Santa Clara, California is the place where Intel Corp. has its corporate headquarters, and that its corporate headquarters is the actual center of direction, control, and coordination of Intel Corp.'s business activities.

## PROCEDURAL BACKGROUND

On May 8, 2012, Plaintiff C. Lynn Thompson filed his Complaint for Negligence in the Thirteenth Judicial District, County of Valencia, State of New Mexico. See Doc. 1-2 ("Complaint"). Thompson alleges that he "is a resident of Valencia County, New Mexico." Complaint ¶ 1, at 1. Thompson alleges that Intel Corp. "is a Delaware corporation with its principal place of business located in Sandoval County, New Mexico." Complaint ¶ 2, at 1. On June 8, 2012, Intel Corp. filed its Notice of Removal. See Doc. 1. Intel Corp. asserts that there is complete diversity in this case, because "Thompson is a resident of . . . New Mexico" and because "Intel is a Delaware corporation, with its principal place of business in California." Notice of Removal at 2. Intel Corp. also states that the amount in controversy exceeds $75,000.00. See Notice of Removal at 2. Intel Corp. attaches an affidavit from Terry R. Guebert of Guebert Bruckner P.C. of Albuquerque, New Mexico, counsel for Intel Corp., that provides an evaluation of Thompson's claim and why his damages likely exceed $75,000.00. See Affidavit of Terry R. Guebert at 1-2 (executed June 8, 2012), filed June 8, 2012 (Doc. 1-3)("Guebert Aff.").

On June 11, 2012, Thompson filed his Motion to Remand. See Doc. 6. Thompson asks the Court to remand this case to state court. See Motion to Remand at 1. Thompson asserts that, "despite Plaintiff's express allegation that Defendant's principal place of business is in New Mexico, Defendant failed to provide any factual basis or evidentiary support for its contention that its principal place of business is in California." Motion to Remand at 2. He contends that, based on this failure to provide evidence, Intel Corp. has not met its burden to invoke diversity jurisdiction. See Motion to Remand at 1-4. Thompson does not dispute that the amount-in-controversy requirement is satisfied, but asserts that Intel Corp. has not met its burden of proving that complete diversity exists between the parties. See Motion to Remand at 1-4. Thompson argues that Intel

Corp. "was required to set forth facts and evidentiary support which would have allowed the Court to determine the location of Intel Corp.'s 'nerve center' as defined by the Supreme Court in" Hertz Corp. v. Friend, 130 S.Ct. 1181 (2010). Motion to Remand at 3-4.

On June 13, 2012, Intel Corp. filed its Notice of Filing Exhibit. See Doc. 8. Attached to the Notice of Filing Exhibit is a document entitled Service of Process Transmittal (dated May 11, 2012), filed June 13, 2012 (Doc. 8). The Service of Process Transmittal is directed to an individual named Vivian Vo who works for Intel Corp. in Santa Clara. See Service of Process Transmittal at 3. The Service of Process Transmittal communicates that CT Corporation accepted service of process for Intel Corp. in New Mexico. See Service of Process Transmittal at 3.

On June 21, 2012, Intel Corp. filed its Defendant Intel Corporation's Response in Opposition to Plaintiff's Motion to Remand. See Doc. 12 ("Response"). Intel Corp. asserts that its Service of Process Transmittal indicates that Intel Corp.'s principal place of business is in California, because that document is directed to an individual in California. See Response at 2-3. Intel Corp. asserts that any defects in the removal procedure were "minor technical error[s] that can be easily corrected." Response at 3. It argues that courts will not remand cases based on such technical errors. See Response at 4-5. Intel Corp. notes that it has also attached an affidavit from an individual who works for Intel Corp. to confirm that their principal place of business is in California. See Response at 4. An affidavit from an individual named James F. Burque, who works in Corporate Risk Management at Intel Corp., states that he has worked for Intel Corp. "since November of 1999" and that "its principal place of business is in the State of California." Affidavit of James F. Burque ¶¶ 1-2, at 7 (executed June 20, 2012), filed June 21, 2012 (Doc. 12). Intel Corp. also attaches a copy of a printout from its website which relates that Intel Corp.'s corporate headquarters are in Santa Clara. See Intel Corp., Intel Company Information, Intel,

-3-

http://www.intel.com/content/www/us/en/company-overview/company-facts.html, at 9, filed June 21, 2012 (Doc. 12)("Intel Website").

On June 29, 2012, Thompson filed his Plaintiff's Reply in Support of His Motion to Remand. See Doc. 13 ("Reply").  Thompson asserts that Intel Corp. "impliedly concedes that its Notice of Removal is defective."  Reply at 1 (citation omitted).  He argues that Intel Corp. is one of the largest employers in New Mexico and that its argument that it has its principal place of business in California is "an exercise in legal technicality," such that Intel Corp. "should not be permitted to assert that it is an out-of-state citizen on the one hand, and freely ignore the foundational requirements of invoking diversity jurisdiction on the other."  Reply at 2.  Thompson contends that the defects at issue are substantive rather than technical and that there is a dispute about Intel Corp.'s principal place of business.  See Reply at 3.  Thompson argues that Intel Corp. "is attempting another bite at the apple" through "its submission of additional exhibits filed after its Notice of Removal."  Reply at 4.

In preparation for the hearing set on July 11, 2012, the Court issued a Minute Order on July 10, 2012, asking the parties to consult the Memorandum Opinion and Order the Court had recently issued on July 10, 2012 in Aranda v. Foamex International, No. 12-0405 (D.N.M.)(Browning, J.), that addressed a related issue regarding consideration of post-removal evidence.  See Doc. 16.  At the hearing on July 11, 2012, the Court informed the parties that, based on its decision in Aranda v. Foamex International, it was inclined to find that it could consider Intel Corp.'s post-removal evidence and to deny the Motion to Remand.  See Transcript of Hearing at 2:12-3:18 (taken July 11, 2012)(Court)("Tr.").[1]  Thompson noted that the affidavit from Brusque that Intel Corp. provided,

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

-4-

although it relates that Intel Corp.'s principal place of business is in California, does not state that its corporate headquarters are in California. <u>See</u> Tr. at 3:19-4:10 (Jackson). The Court noted that Thompson did not appear to focus heavily on the issue regarding where Intel Corp.'s corporate headquarters is in its Motion to Remand. <u>See</u> Tr. at 4:11-23 (Court). Thompson noted that, in his Motion to Remand, he cited the Supreme Court of the United States' decision in <u>Hertz Corp. v. Friend</u>, which addresses this matter. <u>See</u> Tr. at 5:10-14 (Jackson). He asserted that the defects in the Notice of Removal are not technical ones. <u>See</u> Tr. at 7:4-22 (Jackson). The Court stated that a failure to provide information on a business' principal place of business struck the Court as a technical defect. <u>See</u> Tr. at 7:23-8:6 (Court). Thompson noted that New Mexico has a different standard for determining principal place of business than the federal standard and related that he does not have the burden of proving where Intel Corp.'s principal place of business is while proceeding in state court. <u>See</u> Tr. at 8:7-12 (Jackson).[2] Intel Corp. emphasized that any defects were the result of oversight. <u>See</u> Tr. at 9:23-10:14 (Supik). Intel Corp. related that it has a facility in New Mexico and that it has similar facilities throughout the world. <u>See</u> Tr. at 10:2-14 (Supik). The Court asked whether Christopher J. Supik of Guebert Bruckner P.C. of Albuquerque, New Mexico, counsel for Intel Corp., had spoken with someone at Intel Corp. who could confirm that, under the nerve-center test, Intel Corp.'s principal place of business is in California. <u>See</u> Tr. at 10:15-17 (Court). Mr. Supik related that he had a discussion to that effect with Intel Corp. and that he could prepare an affidavit communicating this information. <u>See</u> Tr. at 10:18-22 (Supik, Court). Intel Corp. contended that this defect is a technical one that can be corrected. <u>See</u> Tr. at 12:7-12

---

[2]Thompson presumably refers to New Mexico's venue requirements for corporations. "New Mexico case law has long recognized that, for venue purposes, a domestic corporation resides at the location of its principal place of business." <u>Blancett v. Dial Oil Co.</u>, 143 N.M. 368, 370 176 P.3d 1100, 1102 (2008).

(Supik).  Intel Corp. acknowledged that there was some dispute about the location of its principal place of business but related that the dispute does not change the technical nature of the defect. See Tr. at 12:18-13:5 (Supik).

On July 23, 2012, Intel Corp. filed its Notice of Filing of First Amended Affidavit of James F. Burque.  See Doc. 22.  In his amended affidavit, Burque states that "Intel is incorporated in the State of Delaware and has its principal place of business in the State of California."  First Amended Affidavit of James F. Burque ¶ 2, at 1 (executed July 19, 2012), filed July 23, 2012 (Doc. 22-1)("Amended Burque Aff.").  Burque notes that "[t]he corporate headquarters of Intel is located in the [sic] Santa Clara, California."  Amended Burque Aff. ¶ 3, at 1.  He relates that "Intel board meetings, which include the board of directors and the President and CEO of Intel take place at corporate headquarters."  Amended Burque Aff. ¶ 4, at 1.  Burque states that "Intel Fab 11X, which is located in Rio Rancho, New Mexico, is a manufacturing complex."  Amended Burque Aff. ¶ 5, at 1.  Burque notes that "[n]one of Intel's corporate officers reside in New Mexico and there are no board meetings involving the board of directors which take place in New Mexico."  Amended Burque Aff. ¶ 5, at 1.

## RELEVANT LAW REGARDING REMOVAL

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . ." (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996))).  "It is well-established that statutes

conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1232, 1235 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).   "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

### 1.      The Presumption Against Removal.

There is a presumption against removal jurisdiction.  See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995).  "Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333.  The removing party bears the burden of establishing the requirements for federal jurisdiction.  See Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001); Bonadeo v. Lujan, No. 08-0812, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").

The removing defendant bears the burden of establishing that removal is proper.  See McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008)("[A]ccording to this and most other courts, the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence' . . . ."); Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving 'all jurisdictional facts and of establishing a right to removal.'").  The Tenth Circuit has explained that, "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F.App'x 775, 778

(10th Cir. 2005)(unpublished).

2.        **Procedural Requirements for Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed.  See Lewis v. Rego Co., 757 F.2d 66, 68 (3d Cir. 1985).  "The failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand."   Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1077 (10th Cir. 1999)(quoting Snapper, Inc. v. Redan, 171 F.3d 1249, 1253 (11th Cir. 1999)).  See Bonadeo v. Lujan, 2009 WL 1324119, at *4;  Chavez v. Kincaid, 15 F.Supp.2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The right to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Pursuant to 28 U.S.C. § 1446(a),

[a] defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).  28 U.S.C. § 1446(a) has been interpreted as requiring all defendants to join in a removal petition.  See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 620 (2002)(citing 28 U.S.C. § 1446(a); Chi., Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900)); Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034-35 (10th Cir. 1998); Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)("A co-defendant . . . did not join in the petition for removal and the petition was thus procedurally defective.").

Section 1446 specifies the timing requirements for removal.  See 28 U.S.C. § 1446(b).  "In

a case not originally removable, a defendant who receives a pleading or other paper indicating the postcommencement satisfaction of federal jurisdictional requirements -- for example, by reason of the dismissal of a nondiverse party -- may remove the case to federal court within 30 days of receiving such information." Caterpillar Inc. v. Lewis, 519 U.S. at 68-69. "Under § 1446(b), the removal period does not begin until the defendant is able 'to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts.'" Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1077 (quoting DeBry v. Transamerica Corp., 601 F.2d 480, 489 (10th Cir. 1979)). Accord Aranda v. Foamex Int'l, No. 12-0405, 2012 WL 2923183, at *23-26 (D.N.M. July 11, 2012)(Browning, J.); Zamora v. Wells Fargo Home Mortg., 831 F.Supp.2d 1284, 1295 (D.N.M. 2011)(Browning, J.). The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself." Akin v. Ashland Chem. Co., 156 F.3d at 1036. The Tenth Circuit specifically disagreed with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036 (emphasis in original). Thus, when "an initial pleading" is "ambiguous in that it did not provide unequivocal notice of the right to remove," this thirty-day period does not begin to run in the Tenth Circuit until the defendant receives unequivocal notice of the right to remove. Akin v. Ashland Chem. Co., 156 F.3d at 1035.

"No case, however, may be removed from state to federal court based on diversity of citizenship 'more than 1 year after commencement of the action.'" Caterpillar Inc. v. Lewis, 519 U.S. at 69 (quoting 28 U.S.C. § 1446(b)). Section 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or

proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).  The requirement that a defendant timely file the notice of removal is mandatory, although timeliness is not jurisdictional.  See United States ex rel. Walker v. Gunn, 511 F.2d 1024, 1026 (9th Cir. 1975)("[T]he statute, insofar as the time for removal is concerned, is imperative and mandatory, must be strictly complied with, and is to be narrowly construed."); Bonadeo v. Lujan, 2009 WL 1324119, at *6 (citing McCain v. Cahoj, 794 F.Supp. 1061, 1062 (D. Kan. 1992)).

**3.    Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court of the United States held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  See 519 U.S. at 70-78.  Relying on Caterpillar, Inc. v. Lewis, the United States Court of Appeals for the Ninth Circuit in Parrino v. FHP, Inc., 146 F.3d 699 (9th Cir. 1998), superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006), held that "a procedural defect existing at the time of removal but cured prior to entry of judgment does not warrant reversal and remand of the matter to state court."  146 F.3d at 703. In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed on appeal defects in the notice of removal, which, in addition to not including all defendants, failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("But no one paid any attention to the requirement that all defendants (or none) join a notice of removal . . . .  As it happens, no one paid attention to subject-matter jurisdiction either.").  The Seventh Circuit permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction.  See 150 F.3d at 653-54.

-10-

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal.   See   Jenkins v. MTGLQ Investors, 218 F.App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., Nos. 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished decision)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W.R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present.").   The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, like failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts."   Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).   In McEntire v. Kmart Corp., No. 09-0567, 2010 WL 553443 (D.N.M. Feb. 9, 2010)(Browning, J.), when faced with insufficient allegations in the notice of removal  -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements."   2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 300-02 (10th Cir. 1968)).

There are certain defects, however, that amendment of a notice of removal cannot cure,

particularly once the initial thirty-day removal period has expired.  A defendant may not normally cure a defective notice of removal by asserting a new basis of jurisdiction not contained in the original notice of removal.  See USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 205 (3d Cir. 2003)(citing Blakeley v. United Cable Sys., 105 F.Supp.2d 574, 579-80 (S.D. Miss. 2000); Iwag v. Geisel Compania Maritima, S.A., 882 F.Supp. 597, 601 (S.D. Tex. 1995))(noting that amendment of a notice of removal was proper when the defendant "did not rely on a basis of jurisdiction different from that originally alleged").  As Professors Wright and Miller have explained:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount.  In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-preferred basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14C Wright & Miller, Federal Practice and Procedure § 3733, at 651-659 (4th ed. 2009)(footnotes omitted)(emphasis added).  Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction."   16 J. Moore, Moore's Federal Practice, § 107.30[2][a][iv], at 107-184 (3d ed. 2012).  The Honorable Gerald E. Lynch, United States District Judge for the Southern District of New York, has held:

> Although a removing party may be given leave to cure a defective ground for removal under 28 U.S.C. § 1653 barring a "'total absence of jurisdictional foundations,'" such amendments are in the court's discretion and are intended to preserve jurisdiction where it exists but was defectively stated.  Here, Prudential's removal petition was irremediably defective as to federal question jurisdiction and silent as to diversity.  Moreover, "[t]he right to remove a state action to federal court on diversity grounds is statutory . . . .  In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of the state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."  Given this restrictive policy and given Prudential's failure to offer any reason for not alleging diversity jurisdiction in its

-12-

> original removal petition, the Court declines to grant leave to add new grounds for federal jurisdiction.

Arancio v. Prudential Ins. Co. of Amer., 247 F.Supp.2d 333, 337 (S.D.N.Y. 2002)(Lynch, J.)(alteration in original)(emphasis in original)(citations omitted).  Along the same lines, the United States Court of Appeals for the Eleventh Circuit would not consider on appeal, once the Eleventh Circuit rejected the defendant's complete preemption argument, the defendant's argument that diversity jurisdiction was proper, because the defendant "had the burden to plead this basis in its notice of removal, and it did not."  Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1012 n.7 (11th Cir. 2003).  The Court has also prevented a defendant from asserting diversity jurisdiction as a basis for subject-matter jurisdiction when the original notice of removal asserted only federal-question jurisdiction as the basis for the Court's subject-matter jurisdiction.  See Zamora v. Wells Fargo Home Mortg., 831 F.Supp.2d at 1292 ("[T]he Court concludes that Wells Fargo may not under these facts avoid remand by adding an additional basis of subject-matter jurisdiction not asserted in the original notice of removal through amendment or supplementation.").

"Following th[e] thirty-day period [for removal], the defendant must rely on 28 U.S.C. § 1653 to amend its notice of removal."  Zamora v. Wells Fargo Home Mortg., 831 F.Supp.2d at 1292 (citing Geismann v. Aestheticare, LLC, 622 F.Supp.2d 1091, 1095 (D. Kan. 2008)).  This statute provides: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."  28 U.S.C. § 1653.  A defendant must "seek leave of court to amend its notice of removal under 28 U.S.C. § 1653."  Watkins v. Terminix Int'l Co., Ltd. P'ship, 1997 WL 34676226, at *2 (citing Buell v. Sears, Roebuck & Co., 321 F.2d 468, 471 (10th Cir. 1963)).  In disallowing a plaintiff to amend on appeal his complaint under 28 U.S.C. § 1653 to assert a federal question to support subject-matter jurisdiction, the Tenth Circuit stated:

-13-

The intention of Congress in enacting 28 U.S.C. § 1653 was to broadly permit amendment to avoid dismissal on technical grounds.  The power of the appellate court to correct defective jurisdictional allegations concerns defects of form, not substance.  An amendment [to add a new basis of subject-matter jurisdiction] such as contemplated by appellant is not within the purview of the statute.

Brennan v. Univ. of Kan., 451 F.2d 1287, 1289 (10th Cir. 1971)(footnotes omitted).[3]

**4.    Consideration of Post-Removal Evidence.**

In McPhail v. Deere and Co., the Tenth Circuit stated that, "[b]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  McPhail v. Deere & Co., 529 F.3d at 956 (emphasis added).  In determining that the jurisdictional amount was met, the Tenth Circuit looked to the allegations in the complaint and a series of electronic mail transmissions, included in the notice of removal, indicating that the plaintiff's counsel also believed that the amount in controversy "very well may be" above $75,000.00:

> In its notice of removal, Deere cited the allegations in the complaint and represented that the amount in controversy in the case exceeded $75,000.  Deere also incorporated several emails and letters that shows that counsel for Deere had a conversation with one of Mrs. McPhail's attorneys that included a discussion of the value of the claim.  Deere's counsel interpreted comments made during this discussion as meaning that Mrs. McPhail was stipulating that she would be seeking

_____

[3]It is worth noting that the Tenth Circuit, following its articulation of this ground for its holding, gave as an alternative basis that the amendment would have been futile, because American law has no extraterritorial effect in foreign countries.  See Brennan v. Univ. of Kan., 451 F.2d at 1289.  That alternative ground does not undercut the rationale that 28 U.S.C. § 1653 does not permit substantive, as opposed to technical, amendments.  See Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1243 (10th Cir. 2008).   The Tenth Circuit has recognized that "[a]lternative rationales . . . providing as they do further grounds for" a court's "disposition, ordinarily cannot be written off as dicta."  Surefoot LC v. Sure Foot Corp., 531 F.3d at 1243.  Moreover, the Tenth Circuit first concluded that the statute did not authorize the plaintiff's proposed amendment, and thus, arguably, the holding that amendment would have been futile would be the alternative holding.  See Brennan v. Univ. of Kan., 451 F.2d at 1289.

more than $75,000 in damages.  Mrs. McPhail's attorneys consistently denied this
concession, stating that any figures discussed between counsel were spoken
informally "in general settlement discussions" and did not necessarily reflect the
actual amount in controversy.  Counsel for Mrs. McPhail also wrote a separate letter
refusing to concede an amount in controversy in excess of $75,000, inviting Deere's
attorneys to undertake their own "economic analysis" to ascertain the amount in
controversy.  While Mrs. McPhail's counsel stated in this correspondence that it
"may very well be" true that the amount in controversy would exceed $75,000, he
refused to stipulate to any amount other than the $10,000 required by Oklahoma law.

This information, which was presented to the district court with the notice of
removal, is sufficient to support diversity jurisdiction.  The complaint itself sets forth
all of the underlying facts: Mrs. McPhail alleged that Deere's defective design led
to Mr. McPhail's "severe bodily injuries" which in turn led to "permanent and
progressive injury" and his "wrongful death."   In addition, she also cited the
Oklahoma wrongful death statute, and requested "all relief enumerated therein."
That statute allows recovery for medical and burial expenses, the loss of consortium
and the grief of the surviving spouse, the mental pain and anguish suffered by the
decedent, pecuniary loss based on earning capacity, and grief and loss of
companionship; it also permits an award of punitive damages.  For actions found by
a jury to exhibit "reckless disregard," the jury has the discretion to award any amount
up to $100,000 or the amount awarded in actual damages, whichever is greater.

Given these allegations and the nature of the damages sought, the complaint
on its face may be sufficient by itself to support removal.  We need not decide the
question based on the complaint alone, however, because the correspondence
between counsel that was incorporated in the notice of removal demonstrates that
Mrs. McPhail's attorneys also believed the amount in controversy "very well may
be" in excess of $75,000.  Although Mrs. McPhail's counsel attempted to downplay
this as a general figure discussed in "the context of settlement," we agree with the
Ninth Circuit that this is relevant evidence of the value of the claim.  Even assuming
the amount in controversy was not apparent from the face of the complaint, this
background information provides enough supplementary information for the district
court to conclude that it is not legally certain that Mrs. McPhail will recover an
amount less than $75,000.  The district court was therefore correct in concluding that
Deere proved the facts necessary to establish that more than $75,000 was in
controversy.

McPhail v. Deere & Co., 529 F.3d at 956-57 (citations omitted).  While it does not appear that the

Tenth Circuit relied on post-removal evidence in McPhail v. Deere & Co., given that it described

the exhibits it considered as attached to the notice of removal, the Tenth Circuit explained that a

court could consider, when assessing whether the amount in controversy is over $75,000.00, various

evidentiary matters, including evidence produced at a hearing in federal court on subject-matter

jurisdiction:

> Pre-removal discovery in state court is unlikely to have produced helpful information
> by then. "Even if a defendant immediately were to serve interrogatories or requests
> to admit upon the plaintiff, many states give the opposing party thirty days or more
> in which to answer interrogatories. The defendant, therefore, either must hope that
> the plaintiff will respond well before the ordinary deadline or, in the alternative, must
> seek a court order to shorten the time period." Noble-Allgire, 62 Mo. L.Rev. at 731
> (footnote omitted). And if the plaintiff moves quickly to challenge removal in
> federal court, there may not be time to produce more evidence in federal discovery
> before the court decides to rule. See Fed.R.Civ.P. 16(b)(2) (the district court's
> scheduling order, which sets forth the timing for disclosures, may be issued as late
> as ninety days after the defendant makes an appearance); Fed R. Civ. P. 26(f)(1) (the
> parties must meet to plan for discovery, at the latest, twenty-one days before the
> district court's order under Rule 16(b)(2) is due). If the judge holds a hearing under
> Rule 12(b)(1), the defense can present evidence, but may have little to work with.
>
> . . . .
>
> Second, beyond the complaint itself, other documentation can provide the
> basis for determining the amount in controversy-either interrogatories obtained in
> state court before removal was filed, or affidavits or other evidence submitted in
> federal court afterward. Meridian[ Sec. Ins. Co. v. Sadowski], 441 F.3d [536,]
> 541-42 [(7th Cir. 2006)]; Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d
> 720, 723 (5th Cir. 2002) (allowing "summary-judgment-type evidence," such as
> affidavits, to support jurisdiction). This roughly parallels a plaintiff's right, under
> Fed.R.Civ.P. 10(c), to make "[a] copy of a written instrument that is an exhibit to a
> pleading . . . a part of the pleading for all purposes." In some situations, this sort of
> evidence alone will allow a defendant to support its claims regarding the amount in
> controversy. For example, where a defendant has allegedly breached a contract and
> the plaintiff seeks damages in an indeterminate amount, a defendant might support
> jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the
> notice of removal. Or it might "introduc[e] evidence, in the form of affidavits from
> the defendant's employees or experts, about how much it would cost to satisfy the
> plaintiff's demands." Meridian, 441 F.3d at 541-42 (citing Rubel v. Pfizer Inc., 361
> F.3d 1016 (7th Cir. 2004)).

McPhail v. Deere & Co., 529 F.3d at 593. The Tenth Circuit also stated that, "beyond the complaint

itself, other documentation can provide the basis for determining the amount in controversy -- either

interrogatories obtained in state court before removal was filed, or affidavits or other evidence

submitted in federal court afterward." McPhail v. Deere & Co., 529 F.3d at 596.  The Tenth Circuit

relied heavily on a decision from the United States Court of Appeals for the Seventh Circuit,

Meridian Security Insurance Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006) (Easterbrook, J.).  As

the Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when

addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify

what the plaintiff was actually seeking when the case was removed.'" Aranda v. Foamex Int'l, 2012

WL 2923183, at *18 (quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011)).  The

Court has found that the language in McPhail v. Deere & Co. to some extent conflicts with older

Tenth Circuit decisions:

> The Tenth Circuit's decision in McPhail v. Deere & Co. appears to conflict with the
> Tenth Circuit's previous decisions in Laughlin v. Kmart Corp. and Martin v.
> Franklin Capital Corp.  In Laughlin v. Kmart Corp., the Tenth Circuit held that
> "Kmart's economic analysis of Laughlin's claims for damages prepared after the
> motion for removal and purporting to demonstrate the jurisdictional minimum does
> not establish the existence of jurisdiction at the time the motion was made." 50 F.3d
> at 873.  In Martin v. Franklin Capital Corp., the Tenth Circuit held that the
> defendant's summary of the allegations and the requested relief "[did] not provide
> the requisite facts lacking in the complaint." 251 F.3d at 1291.

Aranda v. Foamex Int'l, 2012 WL 2923183, at *15.

The Court explained that, although there is some conflicting precedent within the Tenth

Circuit on this matter, it is appropriate to consider post-removal evidence to determine whether

subject-matter jurisdiction exists:

> Despite the language in these cases and some tension between them,
> however, in McPhail v. Deere & Co., the Tenth Circuit held that, "[a]lthough this
> Court's opinions have not been entirely clear on [the amount-in-controversy] issue,
> the approach we adopt today is consistent with their holdings and analysis." 529
> F.3d at 954-55.  The Tenth Circuit also clarified its holdings in those cases.
> Describing its holding in Martin v. Franklin Capital Corp., in which it stated that a
> defendant must "establish the jurisdictional amount by a preponderance of the
> evidence," the Tenth Circuit said "it would have been more precise to say that the
> defendant must affirmatively establish jurisdiction by proving jurisdictional facts that

made it possible that $75,000 was in play, which the defendants in Martin failed to do." McPhail v. Deere & Co., 529 F.3d at 955 (emphasis in original). With respect to Laughlin v. Kmart Corp., the Tenth Circuit clarified that it was "presented with a petition and a notice of removal that both only referred to damages in excess of $10,000." McPhail v. Deere & Co., 529 F.3d at 955. Furthermore, the notice of removal in Laughlin v. Kmart Corp., referred only to the removal statute and "thus no jurisdictional amounts are incorporated into the removal notice by reference to the statute." Laughlin v. Kmart Corp., 50 F.3d at 873. Accordingly, even though there appears to be some tension between these decisions, because the Tenth Circuit, in McPhail v. Deere & Co., characterized its holding as consistent with its prior decisions and because McPhail v. Deere & Co. is the Tenth Circuit's most recent, and most thorough, discussion of how to determine the amount in controversy, the Court will focus its analysis on that case.

. . . .

Aranda places great emphasis on Judge Parker's decision in the Hernandez MOO[4] and argues that post-removal evidence, such as his refusal to stipulate, is inappropriate. Judge Parker determined that, although post-removal evidence established "undisputed" evidence that the amount in controversy exceeded $75,000.00, the Tenth Circuit "has consistently held that a court cannot consider post-removal documents." Hernandez MOO at 5. The Hernandez MOO cites to pre-2008 cases and does not discuss the language from McPhail v. Deere & Co. which undercuts this principle. Compare Hernandez MOO at 5 (citing Martin v. Franklin Capital Corp., 251 F.3d at 1291 n.4; Laughlin v. Kmart Corp., 50 F.3d at 873), with McPhail v. Deere & Co., 529 F.3d at 953 (noting that "there may not be time to produce more evidence in federal discovery before the court decides to rule" on a motion to remand and that, "[i]f the judge holds a hearing under Rule 12(b)(1), the defense can present evidence, but may have little to work with"). Furthermore, the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that "events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed." Carroll v. Stryker Corp., 658 F.3d at 681. The Court agrees with the Tenth and Seventh Circuits that post-removal evidence can assist the Court, clarify what amount was in controversy when the case was removed, and avoid the "serious abuse" with which the Tenth Circuit has been concerned. McPhail v. Deere & Co., 529 F.3d at 594. There is often insufficient time in state court for a defendant to conduct any discovery before the time to remove passes. See McPhail v. Deere & Co., 529 F.3d at 953 ("Pre-removal discovery in state court is unlikely to have produced helpful information by [the time for removal]."). It seems inconsistent, both internally and with Congress' allowance for removal, for a court to acknowledge that there is

---

[4]Hernandez v. Safeco Ins. Co. of Am., No. Civ. 11-0245, Memorandum Opinion and Order, filed September 8, 2011 (Doc. 33)(Parker, S.J.).

"undisputed" evidence that the amount in controversy exceeds $75,000.00, but find that the amount-in-controversy requirement is not met, and appears to serve only to encourage plaintiffs to be obstructive. There is a presumption against removal, but there should not be hostility to removal. Judge Parker also found that "general or vague allegations in a complaint of a 'serious' injury and resulting damages makes it impossible for a court to determine whether the amount in controversy exceeds $75,000." Hernandez MOO at 7. He noted that the plaintiff alleged that she suffered from "unspecified 'serous personal injuries" and found such allegations insufficient to estimate the plaintiff's damages. Hernandez MOO at 9. Unlike the complaint that Judge Parker discussed in the Hernandez MOO, however, Aranda alleges specific injuries to his knees, naming the torn ligaments and other injuries he suffered, and details the damages from which he alleges he suffers. Aranda's allegations are more similar to the allegations in McPhail v. Deere & Co. and Luckett v. Delta Airlines, Inc., which the Tenth Circuit found sufficient to satisfy the amount-in-controversy requirement.

Aranda v. Foamex Int'l, 2012 WL 2923183, at *16, *18. Other courts discussing Laughlin v. Kmart Corp., have noted that it employs a restrictive approach to the consideration of evidence supporting removal. See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 948 (11th Cir. 2000)(noting that Laughlin v. Kmart Corp. "is the only case cited or found which employs such a restrictive approach"); Heller v. Allied Textile Cos., Ltd., 276 F.Supp.2d 175, 181 (D. Me. 2003)(noting that Laughlin v. Kmart Corp. limited the scope of the remand inquiry to the face of the original notice of removal). "Laughlin v. Kmart Corp.'s place as one of the most restrictive approaches to removal may be why the Tenth Circuit later clarified its views in McPhail v. Deere & Co." Aranda v. Foamex Int'l, 2012 WL 2923183, at *16 n.11.

Various courts have analogized amendment of notice of removals to consideration of post-removal evidence. The Supreme Court has held that, although certain material that appeared "in petitioners' affidavits in support of their motion for summary judgment" should have appeared in the notice of removal, it was proper to treat the notice of removal as if it had been amended to contain the relevant information contained in later-filed documents. Willingham v. Morgan, 395 U.S. 402, 408 n.3 (1969)("This material should have appeared in the petition for removal. However,

for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits.").  Other circuit courts of appeal have also noted the similarity between permitting amendment of a notice of removal and considering post-removal evidence.  The Eleventh Circuit held, in <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184 (11th Cir. 2007), that, although the "district court has before it only the limited universe of evidence available when the motion to remand is filed -- i.e., the notice of removal and accompanying documents," a defendant "may effectively amend a defective notice of removal upon receipt of additional evidence that supplements the earlier-filed notice."  483 F.3d at 1214-15 & n.66.  The Eleventh Circuit then stated that "such a situation might arise where, after filing an insufficient notice of removal but before remand is ordered, the defendant receives a paper from the plaintiff that would itself provide sufficient grounds for removal."  <u>Lowery v. Ala. Power Co.</u>, 483 F.3d at 1215 n.66.[5]

---

[5]Congress recently enacted legislation that modifies removal procedures.  Professor Moore summarizes the major changes that this legislation makes:

> On December 7, 2011, President Obama signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which is intended to clarify the operation of federal jurisdictional statutes and facilitate the identification of the appropriate state or federal courts in which actions should be brought [<u>see</u> Pub. L. No. 112-63, 125 Stat. 758 (2011)].

> . . . .

> Section 103 of the Act makes several changes to removal and remand procedures.  28 U.S.C. § 1446 is amended to cover removal procedures for civil cases only; provisions governing removal of criminal prosecutions have been moved into new 28 U.S.C. § 1455 [Pub. L. No. 112-63, § 103(b), (c), 125 Stat. 758 (2011)].

> Section 103 of the Act also amends 28 U.S.C. § 1441(c) to provide that, on the removal of any civil action with both removable claims and nonremovable claims (i.e., those outside of the original or supplemental jurisdiction of the district court), the district court must sever all nonremovable claims and remand them to the state

-20-

## RELEVANT LAW REGARDING PRINCIPAL PLACE OF BUSINESS

Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000,

---

court from which the action was removed. The amendment also provides that only defendants against whom a removable claim has been asserted need to join in or consent to removal of the action. [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].

Section 103 also amends 28 U.S.C. § 1446(b) to provide that, in a multi-defendant case, each defendant will have 30 days from his or her own date of service (or receipt of initial pleading) to seek removal. Earlier-served defendants may join in or consent to removal by a later-served defendant [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)]. These provisions are intended to resolve a circuit split over when the 30-day removal period begins to run in cases in which not all defendants are served at the same time [see H.R. Rep. No. 112-10, at 13-14 (2011); see, e.g., Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202 (11th Cir. 2008)(30-day period runs from date of service on last-served defendant, and earlier-served defendants may join in last-served defendant's timely removal); Marano Enters. v. Z-Teca Rests., LP, 254 F.3d 753 (8th Cir. 2011)(each defendant has 30 days to effect removal, regardless of when or if other defendants had sought to remove); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254 (5th Cir. 1988)(first-served defendant and all then-served defendants must join in notice of removal within 30 days after service on first-served defendant)].

Section 103 also enacts a new subdivision (c) of 28 U.S.C. § 1446, containing provisions governing the procedures for removal. These include new authorization for a notice of removal in a diversity case to assert the amount in controversy if the initial pleading seeks (1) nonmonetary relief, or (2) a money judgment when state practice either does not permit a demand for a specific sum or permits the recover of damages in excess of the amount demanded. Also part of a new subdivision (c) of 28 U.S.C. § 1446 is a provision allowing removal of a case based on diversity of citizenship more than one year after commencement of the action if the district court finds that the plaintiff acted in bad faith in order to prevent a defendant from removing the action (such as by deliberately failing to disclose the amount in controversy) [Pub. L. No. 112-63, § 103(b), 125 Stat. 758 (2011)].

16 J. Moore, supra, at 107SA-1 to 107SA-2.

exclusive of interest and costs."  28 U.S.C. § 1332(a).[6]  In terms of determining a corporation's citizenship for diversity purposes, Congress has stated that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  In Hertz Corp. v. Friend, the Supreme Court has recently clarified the test for determining the location of a corporation's principal place of business.  Specifically, it held "that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  130 S.Ct. at 1192.  The Supreme Court related that this location "is the place that Courts of Appeals have called the corporation's 'nerve center.'"  130 S.Ct. at 1192.  The Supreme Court clarified that, "in practice," this location "should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings."  130 S.Ct. at 1192.  The Supreme Court stated that "[a] corporation's 'nerve center,' usually its main headquarters, is a single place."  130 S.Ct. at 1193.  The Supreme Court

---

[6] 28 U.S.C. § 1332(a) provides:

(a)     The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between --

  (1)     citizens of different States;

  (2)     citizens of a State and citizens or subjects of a foreign state;

  (3)     citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

  (4)     a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

adopted this rule over a different approach some courts had followed that focused on "the total amount of business activities that the corporation conducts" in a State, because: (i) focusing on the total amount of business activities in a State "invites greater litigation and can lead to strange results"; and (ii) "administrative simplicity is a major virtue in a jurisdictional statute." 130 S.Ct. at 1193.

## ANALYSIS

The Court will deny the Motion to Remand. The Court may properly consider the post-removal evidence that Intel Corp. has offered to support the existence of diversity jurisdiction. The Court finds that Intel Corp. has proved by a preponderance of the evidence that diversity jurisdiction exists under 28 U.S.C. § 1332(a) by presenting evidence that there is complete diversity among the parties and that the amount in controversy exceeds $75,000.00. Intel Corp. must, however, amend its notice of removal to include missing jurisdictional allegations and to include its supporting affidavits. Specifically it should include allegations in the amended notice of removal that Santa Clara is the place where Intel Corp. has its corporate headquarters, and that its corporate headquarters is the actual center of direction, control, and coordination of Intel Corp.'s business activities.

## I. THE COURT MAY PROPERLY CONSIDER THE POST-REMOVAL EVIDENCE INTEL CORP. HAS PRESENTED TO ESTABLISH THE LOCATION OF ITS PRINCIPAL PLACE OF BUSINESS.

On May 8, 2012, Thompson filed his Complaint in the Thirteenth Judicial District in the State of New Mexico. See Doc. 1-2. Thompson alleges that he "is a resident of Valencia County, New Mexico." Complaint ¶ 1, at 1. Thompson alleges that Intel Corp. "is a Delaware corporation with its principal place of business located in Sandoval County, New Mexico." Complaint ¶ 2, at 1. On June 8, 2012, Intel Corp. filed its Notice of Removal. See Doc. 1. Intel Corp. asserts that

there is complete diversity in this case, because "Thompson is a resident of . . . New Mexico" and "Intel is a Delaware corporation, with its principal place of business in California." Notice of Removal at 2.

Intel Corp. attaches to its Response a copy of a printout from its website which relates that Intel Corp.'s corporate headquarters are in Santa Clara. See Intel Website at 9.[7] On July 23, 2012, Intel Corp. filed its Notice of Filing of First Amended Affidavit of James F. Burque. See Doc. 22. In his amended affidavit, Burque states that "Intel is incorporated in the State of Delaware and has its principal place of business in the State of California." Amended Burque Aff. ¶ 2, at 1. Burque notes that "[t]he corporate headquarters of Intel is located in the [sic] Santa Clara, California." Amended Burque Aff. ¶ 3, at 1. He relates that "Intel board meetings, which include the board of

---

[7]Although Thompson never objected to consideration of the website printout, the website printout is hearsay. See United States v. Jackson, 208 F.3d 633, 637 (7th Cir. 2000)("The web postings were not statements made by declarants testifying at trial, and they were being offered to prove the truth of the matter asserted. That means they were hearsay."). When determining whether federal subject-matter jurisdiction exists, a court may consider "'summary-judgment-type evidence,' such as affidavits, to support jurisdiction." McPhail v. Deere & Co., 529 F.3d at 956. A failure to object to evidence on hearsay grounds constitutes a waiver of that objection. See United States v. Jones, 44 F.3d 860, 870 (10th Cir. 1995)("The defense did not raise a hearsay objection at trial. In general, the failure to object to the introduction of evidence is deemed a waiver of the objection absent plain error." (citation omitted)). Reliance on hearsay statements, if opposing counsel raises an objection to that evidence, is not proper when ruling on jurisdictional matters. See Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)("In accord with principles of fundamental fairness and by analogy to Rule 56(e) and (f), it was improper for the district court, in ruling on the 12(b)(1) motion, to have considered the conclusory and hearsay statements contained in the affidavits submitted by defendants . . . ."); In re Griffin, No. 09-11246-WHD, 2011 WL 1789973, at *4 (Bankr. N.D. Ga. Mar. 28, 2011)("The Court may consider 'materials outside of the pleadings to resolve any jurisdictional disputes, but cannot rely on conclusory or hearsay evidence.'"). See also 5B C. Wright, A. Miller, M. Kane, R. Marcus, Federal Practice and Procedure § 1350, at 160 (3d ed. 2004)(discussing how courts can "consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction to resolve factual issues"). Because Thompson failed to object to the website printout, the Court could appropriately consider it. Nevertheless, based on the contents of the Amended Burque Aff. that cover the identical matters as what is listed in the website printout, it is ultimately unnecessary for the Court to rely on the website printout.

directors and the President and CEO of Intel take place at corporate headquarters."   Amended
Burque Aff. ¶ 4, at 1.   Burque states that "Intel Fab 11X, which is located in Rio Rancho, New
Mexico, is a manufacturing complex."   Amended Burque Aff. ¶ 5, at 1.   Burque notes that "[n]one
of Intel's corporate officers reside in New Mexico and there are no board meetings involving the
board of directors which take place in New Mexico."   Amended Burque Aff. ¶ 5, at 1.

The Court concludes that it is appropriate to consider this evidence.   The Court has
previously explained that, although there is some conflicting precedent within the Tenth Circuit on
this matter, it is appropriate to consider post-removal evidence to determine whether subject-matter
jurisdiction exists:

> Despite the language in these cases and some tension between them,
> however, in McPhail v. Deere & Co., the Tenth Circuit held that, "[a]lthough this
> Court's opinions have not been entirely clear on [the amount-in-controversy] issue,
> the approach we adopt today is consistent with their holdings and analysis."  529
> F.3d at 954-55.   The Tenth Circuit also clarified its holdings in those cases.
> Describing its holding in Martin v. Franklin Capital Corp., in which it stated that a
> defendant must "establish the jurisdictional amount by a preponderance of the
> evidence," the Tenth Circuit said "it would have been more precise to say that the
> defendant must affirmatively establish jurisdiction by proving jurisdictional facts that
> made it possible that $75,000 was in play, which the defendants in Martin failed to
> do."  McPhail v. Deere & Co., 529 F.3d at 955 (emphasis in original).   With respect
> to Laughlin v. Kmart Corp., the Tenth Circuit clarified that it was "presented with
> a petition and a notice of removal that both only referred to damages in excess of
> $10,000."  McPhail v. Deere & Co., 529 F.3d at 955.   Furthermore, the notice of
> removal in Laughlin v. Kmart Corp., referred only to the removal statute and "thus
> no jurisdictional amounts are incorporated into the removal notice by reference to
> the statute."  Laughlin v. Kmart Corp., 50 F.3d at 873.   Accordingly, even though
> there appears to be some tension between these decisions, because the Tenth Circuit,
> in McPhail v. Deere & Co., characterized its holding as consistent with its prior
> decisions and because McPhail v. Deere & Co. is the Tenth Circuit's most recent,
> and most thorough, discussion of how to determine the amount in controversy, the
> Court will focus its analysis on that case.

. . . .

> Aranda places great emphasis on Judge Parker's decision in the Hernandez
> MOO and argues that post-removal evidence, such as his refusal to stipulate, is

inappropriate.   Judge Parker determined that, although post-removal evidence established "undisputed" evidence that the amount in controversy exceeded $75,000.00, the Tenth Circuit "has consistently held that a court cannot consider post-removal documents." Hernandez MOO at 5.  The Hernandez MOO cites to pre-2008 cases and does not discuss the language from McPhail v. Deere & Co. which undercuts this principle.  Compare Hernandez MOO at 5 (citing Martin v. Franklin Capital Corp., 251 F.3d at 1291 n.4; Laughlin v. Kmart Corp., 50 F.3d at 873), with McPhail v. Deere & Co., 529 F.3d at 953 (noting that "there may not be time to produce more evidence in federal discovery before the court decides to rule" on a motion to remand and that, "[i]f the judge holds a hearing under Rule 12(b)(1), the defense can present evidence, but may have little to work with").  Furthermore, the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that "events subsequent to removal may clarify what the plaintiff is actually seeking when the case was removed." Carroll v. Stryker Corp., 658 F.3d at 681.  The Court agrees with the Tenth and Seventh Circuits that post-removal evidence can assist the Court, clarify what amount was in controversy when the case was removed, and avoid the "serious abuse" with which the Tenth Circuit has been concerned.  McPhail v. Deere & Co., 529 F.3d at 594.  There is often insufficient time in state court for a defendant to conduct any discovery before the time to remove passes.  See McPhail v. Deere & Co., 529 F.3d at 953 ("Pre-removal discovery in state court is unlikely to have produced helpful information by [the time for removal].").  It seems inconsistent, both internally and with Congress' allowance for removal, for a court to acknowledge that there is "undisputed" evidence that the amount in controversy exceeds $75,000.00, but find that the amount-in-controversy requirement is not met, and appears to serve only to encourage plaintiffs to be obstructive.  There is a presumption against removal, but there should not be hostility to removal.  Judge Parker also found that "general or vague allegations in a complaint of a 'serious' injury and resulting damages makes it impossible for a court to determine whether the amount in controversy exceeds $75,000." Hernandez MOO at 7.  He noted that the plaintiff alleged that she suffered from "unspecified 'serous personal injuries" and found such allegations insufficient to estimate the plaintiff's damages. Hernandez MOO at 9.  Unlike the complaint that Judge Parker discussed in the Hernandez MOO, however, Aranda alleges specific injuries to his knees, naming the torn ligaments and other injuries he suffered, and details the damages from which he alleges he suffers.  Aranda's allegations are more similar to the allegations in McPhail v. Deere & Co. and Luckett v. Delta Airlines, Inc., which the Tenth Circuit found sufficient to satisfy the amount-in-controversy requirement.

Aranda v. Foamex Int'l, 2012 WL 2923183, at *16, *18.  The Supreme Court has also held that,

although certain material that appeared "in petitioners' affidavits in support of their motion for

summary judgment" should have appeared in the notice of removal, it was proper to treat the notice

-26-

of removal as if it had been amended to contain the relevant information contained in later-filed documents. Willingham v. Morgan, 395 U.S. at 408 n.3 ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits.").

Furthermore, the absence of evidence regarding a corporation's principal place of business in a Notice of Removal is a defect that would be technical in nature such that it is curable through amendment or presentation of post-removal evidence. In McMahon v. Bunn-O-Matic Corp., the Seventh Circuit noticed on appeal defects in the notice of removal, which, in addition to not including all defendants, failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("But no one paid any attention to the requirement that all defendants (or none) join a notice of removal . . . . As it happens, no one paid attention to subject-matter jurisdiction either."). The Seventh Circuit permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54. The Tenth Circuit has similarly permitted such amendments. See Lopez v. Denver & Rio Grande W.R.R. Co., 277 F.2d at 832 ("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present.").

In contrast, a defendant may not normally cure a defective notice of removal by asserting a new basis of jurisdiction not contained in the original notice of removal. See USX Corp. v. Adriatic Ins. Co., 345 F.3d at 205. As the Court has discussed in the past, such an amendment is substantive in nature rather than a technical one. See Zamora v. Wells Fargo Home Mortg., 831 F.Supp.2d at 1303 ("Applying the construction of 28 U.S.C. § 1653 announced in Brennan v.

University of Kansas, the Court must conclude that Wells Fargo cannot seek to amend or supplement its jurisdictional allegations in its Notice of Removal with additional bases for subject-matter jurisdiction."). "Following th[e] thirty-day period [for removal], the defendant must rely on 28 U.S.C. § 1653 to amend its notice of removal." Zamora v. Wells Fargo Home Mortg., 831 F.Supp.2d at 1292. This statute provides: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. A defendant must "seek leave of court to amend its notice of removal under 28 U.S.C. § 1653." Watkins v. Terminix Int'l Co., Ltd. P'ship, 1997 WL 34676226, at *2. In disallowing a plaintiff to amend on appeal his complaint under 28 U.S.C. § 1653 to assert a federal question to support subject-matter jurisdiction, the Tenth Circuit stated:

> The intention of Congress in enacting 28 U.S.C. § 1653 was to broadly permit amendment to avoid dismissal on technical grounds. The power of the appellate court to correct defective jurisdictional allegations concerns defects of form, not substance. An amendment such as contemplated by appellant is not within the purview of the statute.

Brennan v. Univ. of Kan., 451 F.2d at 1289.

Intel Corp. is not seeking to add a new basis of jurisdiction with the additional evidence it has filed. It its Notice of Removal, it asserted diversity jurisdiction as its basis for subject-matter jurisdiction. Intel Corp. asserts in its Notice of Removal that there is complete diversity in this case, because "Thompson is a resident of . . . New Mexico" and "Intel is a Delaware corporation, with its principal place of business in California." Notice of Removal at 2. Intel Corp. also states that the amount in controversy exceeds $75,000.00. See Notice of Removal at 2. Thus, Intel Corp. has always alleged that diversity jurisdiction exists. The additional evidence it seeks to present to the Court bears on the presence of diversity jurisdiction. Thus, the Court may properly consider this post-removal evidence that seeks to cure a technical, rather than substantive, deficiency. See

Brennan v. Univ. of Kan., 451 F.2d at 1289.  The Court finds that it is appropriate to permit Intel Corp. to present this evidence.

## II.   INTEL CORP. HAS PROVED, BY A PREPONDERANCE OF THE EVIDENCE, THAT THE EXERCISE OF DIVERSITY JURISDICTION IS PROPER.

In his amended affidavit, Burque states that "Intel is incorporated in the State of Delaware and has its principal place of business in the State of California."  Amended Burque Aff. ¶ 2, at 1. Burque notes that "[t]he corporate headquarters of Intel is located in the [sic] Santa Clara, California."  Amended Burque Aff. ¶ 3, at 1.  He relates that "Intel board meetings, which include the board of directors and the President and CEO of Intel take place at corporate headquarters." Amended Burque Aff. ¶ 4, at 1.  Burque states that "Intel Fab 11X, which is located in Rio Rancho, New Mexico, is a manufacturing complex."  Amended Burque Aff. ¶ 5, at 1.  Burque notes that "[n]one of Intel's corporate officers reside in New Mexico and there are no board meetings involving the board of directors which take place in New Mexico."  Amended Burque Aff. ¶ 5, at 1.

The removing party bears the burden of establishing the requirements for federal jurisdiction. See Martin v. Franklin Capital Corp., 251 F.3d at 1290.  The evidence Intel Corp. has provided is sufficient to prove, by a preponderance of the evidence, that diversity jurisdiction exists.  Thompson alleges that he "is a resident of Valencia County, New Mexico."  Complaint ¶ 1, at 1.  Intel Corp. has presented evidence that it is incorporated in Delaware and has it principal place of business in California.  Under these facts, there is complete diversity among the parties sufficient to support subject-matter jurisdiction under 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . .").  In terms of

determining a corporation's citizenship for diversity purposes, Congress has stated that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  In Hertz Corp. v. Friend, the Supreme Court has recently clarified the test for determining the location of a corporation's principal place of business.  Specifically, it held "that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." 130 S.Ct. at 1192.  The Supreme Court related that this location "is the place that Courts of Appeals have called the corporation's 'nerve center.'" 130 S.Ct. at 1192.  The Supreme Court clarified that, "in practice," this location "should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings." 130 S.Ct. at 1192.  Burque notes that "[t]he corporate headquarters of Intel is located in the [sic] Santa Clara, California." Amended Burque Aff. ¶ 3, at 1.  He also clarifies that "[n]one of Intel's corporate officers reside in New Mexico and there are no board meetings involving the board of directors which take place in New Mexico." Amended Burque Aff. ¶ 5, at 1.  Thus, there is sufficient evidence for the Court to find, by a preponderance of the evidence, that Intel Corp. is incorporated in Delaware and has its principal place of business in California.  Thompson provides no evidence to support his allegation that Intel Corp. has its principal place of business in New Mexico, and Intel Corp.'s evidence undercuts his allegation.  There is also sufficient evidence for the Court to find that complete diversity exists among the parties, given that Thompson is a resident of New Mexico and Intel Corp. is a resident of both Delaware and California.  Of course, the safer practice is always to provide as much detail in a notice of removal as possible, but the evidence before the Court is sufficient for the

Court to find that it may properly exercise diversity jurisdiction over Thompson's claims.

The Court, if looking at the issue in the strictest manner possible, could require evidence consistent with the Supreme Court's discussion that a corporation's headquarters are "the actual center of direction, control, and coordination." Hertz Corp. v. Friend, 130 S.Ct. at 1192.  Adhering to such a strict approach, particularly in light of the number of removal cases the federal courts see, is unsound.  "[A]dministrative simplicity is a major virtue in a jurisdictional statute." Hertz Corp. v. Friend, 130 S.Ct. at 1193.  Intel Corp. has presented evidence that "[t]he corporate headquarters of Intel is located in the [sic] Santa Clara, California."  Amended Burque Aff. ¶ 3, at 1.  The Supreme Court has noted that, "in practice [the principal place of business] should normally be the place where the corporation maintains its headquarters." Hertz Corp. v. Friend, 130 S.Ct. at 1192 (emphasis added).  It then provided as a caveat that a corporation's principal place of business will "usually [be] its main headquarters," "provided that the headquarters is the actual center of direction, control, and coordination." Hertz Corp. v. Friend, 130 S.Ct. at 1192 (emphasis added).  Thus, the best reading of the Supreme Court's discussion is that, in the majority of cases, the corporate headquarters will be a corporation's principal place of business under the nerve center test.  Intel Corp.'s burden to invoke federal court jurisdiction is only by a preponderance of the evidence, so it is sufficient, to prove that its principal place of business is in California, that Intel Corp. has provided evidence that its corporate headquarters are in California.  See McPhail v. Deere & Co., 529 F.3d at 953 ("[A]ccording to this and most other courts, the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence' . . . .").  On the rather limited record that the parties have provided on this issue, Intel Corp. has proved, by a preponderance of the evidence, that its principal place of business is in California.  As the Supreme Court's decision in Hertz Corp. v. Friend indicated, the location of the corporate headquarters will usually be the nerve center for

that corporation.  See Hertz Corp. v. Friend, 130 S.Ct. at 1192.  The Court has no contrary evidence indicating that Intel Corp.'s corporate officials direct, control, and coordinate activities elsewhere. Furthermore, the Supreme Court emphasized that it was adopting a test of "administrative simplicity."  Hertz Corp. v. Friend, 130 S.Ct. at 1193.  Thus, under the nerve center test, a statement in an affidavit, assuming the affiant has personal knowledge, that a corporation has its corporate headquarters in a given State is sufficient, absent contrary evidence, to show by a preponderance of the evidence that the corporation's principal place of business is located in that State.

Furthermore, Thompson has never disputed that the amount in controversy requirement for diversity jurisdiction is met.  In its Notice of Removal, Intel Corp. states that the amount in controversy exceeds $75,000.00.  See Notice of Removal at 2.  Intel Corp. attaches an affidavit from Mr. Guebert to its Notice of Removal that provides an evaluation of Thompson's claim and why his damages likely exceed $75,000.00.  See Guebert Aff. at 1-2.  Thompson has presented no arguments or evidence to the contrary.   Thus, the Court concludes that Intel Corp. has proved by a preponderance of the evidence that diversity jurisdiction exists.  The Court would be focusing too much on technicalities if it remanded the case for Intel Corp.'s failure to attach sufficient evidentiary support to its initial Notice of Removal, given that Intel Corp. has always asserted that diversity jurisdiction was the Court's basis for subject-matter jurisdiction, and stated in its initial Notice of Removal that its principal place of business is in California.  In this context, the Tenth Circuit has reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, like failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional

foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.

As the Court has stated in the past, the presumption against removal does not mean hostility to removal. See Sawyer v. USAA Ins. Co., 839 F.Supp.2d 1189, 1207 (D.N.M. Mar. 8, 2012)(Browning, J.)("On the other hand, strict construction and a presumption against Congressionally allowed removal should not become a judicial hostility toward removal cases."). Congress has provided for removal jurisdiction for at least over 140 years, see Ry. Co. v. Whitton's Adm'r, 80 U.S. 270, 287-88 (1871)(discussing "the act of March 2d, 1867 under which the removal from the State court was made" (emphasis omitted)), and there is no reason for the federal courts to dispose of one more civil case on their crowded dockets, and return the case to state court, over a technical flaw. Most people in Albuquerque, which sits in a relatively poor State without a lot of Fortune 500 companies, know that Intel Corp. has a plant in Rio Rancho, New Mexico, but few are so delusional, however, to think that Intel Corp. has its headquarters in Rio Rancho. It would be a shame if the law did not, somehow, reflect that reality. Courts should not reinforce what Charles Dickens said in Oliver Twist -- that the law is an ass. Here, the law and reality coincide. While Intel Corp. and its attorneys could have been more detailed in the Notice of Removal and their affidavits by elaborating that Santa Clara is Intel Corp.'s nerve center, in the end, it has met its burden to invoke the Court's jurisdiction. Consequently, the Court will deny the Motion to Remand.

The Court will, however, require Intel Corp. to amend its Notice of Removal to include the Amended Burque Aff. as an attachment to the Notice of Removal. A notice of removal should generally be self-contained in that it has all the necessary allegations and attached proof to support removal. See Willingham v. Morgan, 395 U.S. at 408 n.3 ("This material should have appeared in

the petition for removal.  However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits."); Buell v. Sears, Roebuck & Co., 321 F.2d 468, 471 (10th Cir. 1963)("The same rules apply to petitions for removal as to complaints both as to the necessity of affirmatively showing the foundations for jurisdiction and as to amendments to show jurisdiction in conformance with proof.").[8]  While an appellate court might be able to overlook the issue and deem the Notice of Removal amended, the trial court at the beginning of the case should do all it can to put the case in the proper posture procedurally, even if that process requires compliance with technical matters. In addition to amending a notice of removal, supplementation of a notice of removal can also be a proper avenue to cure a defective notice of removal.  See Countryman v. Farmers Ins. Exch., 639 F.3d 1270, 1273 (10th Cir. 2011)("The omission of a summons from Defendants' joint notice of removal was an inadvertent, minor procedural defect that was curable, either before or after expiration of the thirty-day removal period.  Defendants supplemented their joint notice of removal to include the summons, and Plaintiff was not prejudiced by the omission.").  Thus, Intel Corp. must amend its Notice of Removal to include the Amended Burque Aff. as an attachment.  Intel Corp. must also include the missing jurisdictional allegations, to the extent the allegations are true, in its notice of removal.  Specifically it should include allegations in the amended notice of removal that Santa Clara is the place where Intel Corp. has its corporate headquarters, and that its corporate headquarters is the actual center of direction, control, and coordination of Intel Corp.'s business

---

[8]It is conceivable that some forms of evidentiary proof that support removal would not need to be attached to a notice of removal, such as witness testimony produced at a hearing set for the purpose of resolving disputed jurisdictional facts or a court's oral rulings regarding disputed jurisdictional facts.  See McPhail v. Deere & Co., 529 F.3d at 953-54 ("If the judge holds a hearing under Rule 12(b)(1), the defense can present evidence, but may have little to work with.").

activities.

   **IT IS ORDERED** that Plaintiff's Motion for Remand, filed June 11, 2012 (Doc. 6), is

denied.

_____
                                    UNITED STATES DISTRICT JUDGE

*Counsel:*

Wesley Jackson
Roehl Law Firm
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Terry R. Guebert
Christopher J. Supik
Guebert Bruckner P.C.
Albuquerque, New Mexico

   *Attorneys for the Defendant*